**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **RICHARD LOCKE,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) |
| | )   **Civil Action No. 3:18-cv-869** |
| **OFFICE/PRO TECHNOLOGIES,** | ) |
| **INC., d/b/a OPTECH,** | ) |
| | ) |
| *Defendant.* | ) |

**COMPLAINT**
**(Jury Trial Requested)**

Comes now the Plaintiff, Richard Locke, by counsel, and complains of Office/Pro Technologies, Inc. d/b/a Optech as follows:

**Nature of Claims**

1.     This Complaint arises out of Defendant Office/Pro Technologies, Inc. d/b/a Optech's unlawful termination of Plaintiff, Richard Locke, because he was and/or was regarded as a person with a disability. This Complaint asserts claims for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (hereinafter the "ADA").

2.     Plaintiff seeks declaratory judgment, injunctive relief, back pay, benefits, front pay and/or reinstatement, compensatory, punitive damages, and reasonable attorneys' fees.

**Jurisdiction and Venue**

3.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117(a).

4.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission as to his ADA claims, has exhausted all necessary procedural prerequisites and has filed his ADA claims within ninety (90) days of receipt of a right to sue letter from the Equal Employment Opportunity Commission.

5.      This Court is an appropriate venue for this cause of action pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 2000e-5(f)(3). *Gilbert v. General Elec. Co.*, 347 F. Supp. 1058, 1060 (E.D. Va. 1972), *affirmed sub nom. General Electric Co. v. Merhige,* 1972 U.S. App. LEXIS 6632, No. 72-3327, 1972 WL 2601, at *1 (4th Cir. Nov. 20, 1972) (unpublished). The unlawful employment practices complained of were committed in the Commonwealth of Virginia.

**Parties**

6.      The Plaintiff, Richard Locke (hereinafter "Plaintiff") is a U.S. citizen and resident of Port Vue, Pennsylvania. At all times relevant to the matters alleged herein, Plaintiff was an employee within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4).

7.      The Defendant, Office/Pro Technologies, Inc. d/b/a Optech (hereinafter referred to as "Defendant" or "Optech"), is a Virginia corporation with its principal place of business in James City County, Virginia. At all times pertinent hereto, Defendant was, is, and has been an employer engaged in an industry affecting commerce with more than 15 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Defendant

is an "employer" as defined in 42 U.S.C. § 12111(5)(A) and is subject to the provisions of the ADA.

8.      At all relevant times, Defendant's agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of the Defendant.

### Factual Allegations

9.      Plaintiff was born in 1949.

10.     Together with his wife, Mary Lou Locke ("Ms. Locke"), Plaintiff founded, and began working for, Optech in 1987.

11.     Optech provides system design, integration, sales, installation and service support for computer and data communication networks, telecommunications, multimedia and security solutions to schools, state, local and federal government agencies and private businesses.

12.     From the beginning of Optech's operation, Ms. Locke has been its President.

13.     Plaintiff handled the technical and sales departments and was the person generating income for Optech.  Early on in his employment with Optech, Plaintiff worked under the title of Technical Director. Optech was successful and hired more employees, and the business was doing well.  Plaintiff was in charge of all operations, approved all quotes, assigned all jobs and handled all hiring and training of new employees, etc.

14.     One of the employees Optech hired was Adam Theis ("Theis").

15.     In the summer of 2012 Plaintiff suffered a stroke, limiting his ability to walk and interfering with his sense of balance. Initially, Plaintiff also suffered a decrease in his ability to

concentrate, and he tired easily. However, most of these symptoms decreased within six months of his stroke.

16.     Not long after the stroke, Plaintiff reduced his responsibilities to some degree and met with Theis to discuss a transfer of certain responsibilities from Locke to Theis.  Plaintiff would still be signing off on any major decisions but was giving Theis more responsibility.

17.     However, over time, Theis began taking over many of Plaintiff's tasks and responsibilities, even without Plaintiff's consent.  Ms. Locke was signing off and giving Theis approval to move forward without Plaintiff's consent.

18.     In or around 2016, Optech's President Ms. Locke said to Plaintiff, "You checked out a long time ago," referring to what she perceived as Plaintiff's diminished intellectual and mental abilities since his stroke.  In January of 2017, Ms. Locke promoted Theis to General Manager and essentially stripped Plaintiff of all managerial duties. Thereafter, Ms. Locke dismissed and did not consider any suggestions Plaintiff had or comments about jobs or assignments.

19.     As of the summer of 2017, Plaintiff had been working with a customer in Pennsylvania. Optech did not provide Plaintiff with proper support or resources for the assignment to be completed in the most efficient and timely manner. However, Theis made sure that all assignments Theis was working on were fully staffed and received full attention for success and completion. Optech was setting Plaintiff up to fail.

20.     It became a normal occurrence for Theis to conduct staff meeting, the same sort of meetings Plaintiff used to conduct before his stroke, without even inviting Plaintiff to attend.

Any time Plaintiff went to the office, the staff would look at him as if Plaintiff did not belong and treated him like a crazy, diminished old man.

21.     On August 1, 2017, Ms. Locke asked Plaintiff to come into the office to meet with her. When Plaintiff arrived, she and Theis were in the conference room waiting for him. Ms. Locke asked for an update on the Pennsylvania job, and Plaintiff provided an update.  Ms. Locke then stated, "After the end of August we will have no more work for you in Pennsylvania."

22.     On September 2, 2017, Ms. Locke sent an email to Plaintiff, "You are crazy and not in a good way."

23.     Also, on September 2, 2017, Ms. Locke asked Plaintiff in an email, "Can you say Alzheimer's?"

24.      On September 15, 2017 Optech terminated Plaintiff's employment.  Around that same time Ms. Locke requested to know the details of Plaintiff's mental status and any other medical issues Plaintiff had been dealing with. Before, during and after Plaintiff's termination, Ms. Locke sent him various text messages and emails, showing that Optech questioned Plaintiff's mental and intellectual faculties:

    a.  On November 8, 2017, Ms. Locke wrote in an email to Plaintiff: "Your bad and violent behaviors continues [sic] to confirm my suspicions that you are mentally diminished. There will be no meetings or negotiations with you or your attorney until after you present current physical and mental health assessments."

    b.  On November 15, 2017, Ms. Locke wrote in a text message to Plaintiff, "Maybe when you present an [sic] medical assessment of your physical and mental health. Until I have that there will be no mediation with or without attorneys."

    c.  On November 16, 2017, Ms. Locke sent Plaintiff another text message, "It must be because you are ashamed of your behavior. If you aren't you are sicker than we thought."

    d.  On November 18, 2017, Ms. Locke wrote Plaintiff another email, "You will have an assessment done and prove to me that you are physically healthy and mentally sound or are being treated for any health and/or mental conditions."

    e.  On February 19, 2018, Ms. Locke's attorney, Dale Truitt Berrett, sent an email to Plaintiff's attorney, "[Ms. Locke] had concerns about your husband's [sic] competency in being able to reach a resolution. … [S]he is concerned that his stroke may have caused a loss of cognitive functioning."

25.    Defendant terminated Plaintiff on September 15, 2017 because Plaintiff had a physical or mental impairment that substantially limited one or more major life activities, because he had a record of such substantially limiting impairments and/or because Optech perceived him as being so impaired.

**COUNT ONE**
**ADA – 42 U.S.C. 12101 *et seq.***
**Disparate Treatment**

26.    Plaintiff incorporates and re-alleges the allegations contained within the preceding paragraphs of this Complaint as though fully set forth herein.

27.    All the acts of the Defendant's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant.

6

28.     Plaintiff was employed with the Defendant for thirty years, from 1987 until the date of his unlawful termination, September 15, 2017.

29.     In the summer of 2012 Plaintiff suffered a stroke, limiting his ability to walk and interfering with his sense of balance. Initially, Plaintiff also suffered a decrease in his ability to concentrate, and he tired easily. However, most of these symptoms decreased within six months of his stroke.

30.     A stroke is a physical impairment that substantially limits various major life activities, including the neurological, musculoskeletal, circulatory and cardiovascular systems and major life activities such as physical or motor functioning and brain function. Plaintiff experienced hemiparesis, which is a weakness of one side of the body and caused difficulty caring for himself, walking, standing, concentrating, balancing, climbing, grasping, or gripping objects. Plaintiff further periodically experienced general muscle fatigue or a lack of coordination. Plaintiff's stroke was a life-changing event that affected his emotional well-being as much as his physical function.

31.     Optech knew that Plaintiff had had a stroke and discriminated against him because of his actual and/or perceived disability, as well as because he had a record of a disability.

32.     Defendant terminated Plaintiff on September 15, 2017 because Plaintiff had a disability and a record of a disability, and because Optech perceived him to have a disability.

33.     During his employment with Defendant, Plaintiff's job performance met or exceeded Defendant's legitimate expectations.

34.     Plaintiff was a qualified individual as that term is defined by the Americans with Disabilities Act.

35.     Plaintiff was suffering from a serious medical condition that had a significant impact on major life activities.

36.     Plaintiff possessed the requisite skills to do his job, as he had done throughout his employment with Defendant.

37.     Plaintiff continued to be capable of doing the essential functions of his job, as he had done throughout his employment with Defendant.

38.     Plaintiff informed Defendant about his disability, and since 2012, Defendant knew that Plaintiff was an individual with a disability.

39.     Plaintiff worked and performed his job to the best of his abilities.

40.     Defendant terminated Plaintiff on September 15, 2017.

41.     Defendant's actions were done in willful violation of Plaintiff's rights under the Americans with Disabilities Act.

42.     Defendant acted with malice and/or with reckless disregard for Plaintiff's rights under the Americans with Disabilities Act when it terminated Plaintiff and discriminated against him because of his disability.

43.     Plaintiff is entitled to punitive damages.

44.     Defendant terminated Plaintiff's employment because of his disability and thereby violated his right to equal employment opportunity as protected by the ADA.

45.     Plaintiff has been damaged by Defendant's actions, including, but not limited to loss of employment, loss of compensation and employment related benefits.

46.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment,

inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages and other injury.

WHEREFORE, Plaintiff Richard Locke demands that judgment be entered in his favor and against the Defendant on the above-stated count, and that in addition this Court issue an Order:

(i) Declaring that the acts and practices complained of herein are in violation of the Plaintiff's rights as secured by the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.;

(ii) Requiring and issuing a mandatory injunction directing the Defendant to reinstate the Plaintiff to a position of equal duties and responsibilities as the Plaintiff would have received but for Defendant's conduct, with equal pay and benefits, retroactive to September 15, 2017, or in the alternative for an award of judgment for front pay and benefits under the ADAAA;

(iii) Awarding Plaintiff back pay for violations of the ADAAA;

(iv) Awarding Plaintiff compensatory damages under the ADAAA;

(v) Awarding Plaintiff an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

(vi) Awarding Plaintiff other appropriate injunctive relief;

(vii) Awarding Plaintiff prejudgment interest, reasonable attorneys' fees, and costs of this suit;

(viii)   Awarding Plaintiff such other and further relief as may be appropriate under the

circumstances.

**TRIAL BY JURY IS REQUESTED.**


RICHARD LOCKE

By Counsel

_____/s/ Tim Schulte_____
Tim Schulte (VSB #41881)
Blackwell N. Shelley, Jr. (VSB #28142)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com

*Counsel for Plaintiff*


10